[Civ. No. 18000. First Dist., Div. One. June 24, 1958.]

ROBERT W. GREENBLATT, Appellant, v. RUSSELL S. MUNRO, as Director of the Department of Alcoholic Beverage Control, Respondent.

*Assigned by Chairman of Judicial Council.

Walter H. Duane for Appellant.

Edmund G. Brown, Attorney General, and Wiley W. Manuel, Deputy Attorney General, for Respondent.

BRAY, J.—Appellant appeals from a superior court judgment denying his application for a peremptory writ of mandate in which appellant sought to reverse the action of the Department of Alcoholic Beverage Control affirmed by the Alcoholic Beverage Control Appeals Board.

## QUESTIONS PRESENTED

1. Sufficiency of the evidence. The main contention in this respect is that the findings were based solely upon hearsay evidence and that therefore the evidence was insufficient.

2. Was there a violation of section 303a, Penal Code?

3. Does the rule requiring exhaustion of administrative remedy bar consideration by this court of question 2?

## RECORD

Appellant is the holder of an on-sale liquor license at a place in San Francisco known as the Robin Hood. He was charged with six counts of violation of liquor control regulations. The hearing officer dismissed all but count III and count V, and found that under count III appellant was guilty of violating rule 143 of the department, in knowingly permitting Anna, employed by him, to solicit at said place Donald Madsen for an alcoholic beverage, to wit, champagne, and that under count V appellant was guilty of violating rule 143 and section 303a, Penal Code, in knowingly permitting Grace, a cigarette girl employed by him, to solicit Richard Gerisch for about 10 "screwdrivers," a mixed drink containing orange juice and vodka, an alcoholic beverage. The department adopted the hearing officer's findings, imposed a 60-day suspension of license for the count III violation, and revoked appellant's license for the count V violation.

## EVIDENCE

About 10 p.m. September 27, 1955, Madsen, a department agent, entered the Robin Hood, taking a seat at a table. Anna, an entertainer employed by appellant, was drinking an undisclosed beverage with two other patrons. Leaving them, she joined Madsen. Thereafter Anna at least three times asked Madsen to buy her champagne. Madsen refused but did buy her three "mists" which Anna said contained brandy, vodka

and orange juice. The price for each was $1.25. Appellant testified that a "mist" as served in his place contained orange juice only.[1]

December 21, 1955, about 1 a.m., Gerisch, in military uniform, having just been released from the army, entered the Robin Hood. Grace, employed there as a cigarette girl, approached and asked him to buy her a drink. Gerisch ordered a "Seagrams seven, seven-up." The bartender asked Grace if she wanted a "screwdriver." She said that she did. Gerisch paid 90 cents for his drink and $1.20 for hers. During his stay there Grace asked him for a drink four times. He actually bought her about 10 or 12. He left at 2 a.m. "feeling good." He had spent $130 in that time. He put his money on the bar and didn't watch it. He thinks he was short-changed. There was evidence showing that appellant's feminine employees were free to mingle with the patrons at the bar and drink beverages solicited from the patrons. Appellant was on the premises and observed Gerisch buying Grace drinks. Within a few days thereafter appellant discharged Grace, solicitation of drinks being one of the factors, but an indirect one. The fact that both Grace and Anna had solicited drinks was brought to his attention and he discharged them both. Appellant testified that a "screwdriver" as served in his place contained orange juice and vodka. He had instructed the girls not to solicit patrons to buy them alcoholic drinks although the girls could have nonalcoholic drinks.

### 1. *Sufficiency.*

■ Petitioner contends[2] that Madsen's testimony is not sufficient to support the count III findings, because (1) it was not proved that a "mist" contains alcohol, and (2) that no champagne was actually served, and (3) Madsen's testimony was hearsay and therefore not sufficient. As to (1), the findings were in favor of appellant on this point, and were not used as a basis for suspension. As to (2), there can be

---

[1]Part of count III alleged that Anna solicited the purchase of two "mists" and that they were alcoholic beverages. The hearing officer and the department found that the alcoholic character of "mists" was not proved.

[2]It is not clear from appellant's briefs as to whether he contends that the testimony of Madsen and Gerisch requires corroboration. It does not. See *Oxman* v. *Department of Alcoholic etc. Control* (1957), 153 Cal.App. 2d 740, 749 [315 P.2d 484]. Actually appellant corroborated Gerisch, at least to some extent, when he testified that he saw Gerisch purchase drinks for Grace and that "screwdrivers" contained vodka.

no denial that champagne is an alcoholic drink. In a charge of soliciting to buy it is immaterial whether the drink solicited is actually purchased. Rule 143, Alcoholic Beverage Control Act, provides: ''No on-sale retail licensee shall permit any female employee of such licensee to solicit, in or upon the licensed premises, the purchase or sale of any alcoholic beverage, any part of which is for, or intended for, the consumption or use of such female employee. . . .'' It is the soliciting of the drink that constitutes the offense charged here.[3] There appear to be no cases discussing this precise question as it applies to rule 143. However, the analogy of the criminal law applies. There a person is guilty of solicitation where he solicits another to commit a crime, even though the crime solicited is never committed. ''It is complete when the solicitation is made, and it is immaterial that the object of the solicitation is never consummated, or that no steps are taken toward its consummation.'' (*People* v. *Burt* (1955), 45 Cal. 2d 311, 314 [288 P.2d 503, 51 A.L.R.2d 948]; see also 14 Cal.Jur.2d 224.)

As to (3), appellant contends that the statements made to Madsen by appellant's employees were hearsay as to him, and that section 11513, Government Code, requires more than hearsay evidence. That section states: ''. . . Hearsay evidence may be used for the purpose of supplementing or explaining any direct evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions.''

While Anna's statement to Madsen as to the fact that a ''mist'' contains alcoholic liquors was hearsay, her statements and those of Grace which constituted solicitations were not hearsay. We are not concerned with the truth of what the girls said but with the fact that they made the statements.

It is stated in VI Wigmore on Evidence, 3rd edition, pages 177-178, that ''The theory of the Hearsay rule . . . is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extra-judicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter*

---

[3] Rule 143 also prohibits the licensee from permitting any female employee to accept any alcoholic beverage purchased upon the premises for her use.

*asserted*, the Hearsay rule does not apply. The utterance is then merely not obnoxious to that rule. It may or may not be received, according as it has any relevancy in the case; but if it is not received, this is in no way due to the Hearsay rule.'' (See also 19 Cal.Jur.2d 109.)

In *People* v. *Henry* (1948), 86 Cal.App.2d 785 [195 P.2d 478], the defendant was accused of attempting to obtain narcotics by fraud and misrepresentation. In rejecting the defendant's contention that the trial court erred in admitting certain testimony, the court said (p. 789) : ''With respect to the telephone conversations between the pharmacist in the first-named drug store and an unknown person and that between the pharmacist at the second drug store and an unnamed person, only one party to the respective conversations testified and of course the appellant was not a party thereto. There is a well-established exception or departure from the hearsay rule applying to cases in which the very fact in controversy is whether certain things were said or done and not as to whether these things were true or false, and in these cases the words or acts are admissible not as hearsay, but as original evidence.'' (See also *People* v. *King* (1956), 140 Cal.App.2d 1 [294 P.2d 972].)

In *Werner* v. *State Bar* (1944), 24 Cal.2d 611 [150 P.2d 892], the statements of the petitioner's wife as related by three witnesses were held not to be hearsay. The court said that the hearsay rule does not forbid the admission of evidence that a statement has been made when the making of the statement is significant irrespective of the truth or falsity of its content.

In *Head* v. *Wilson* (1939), 36 Cal.App.2d 244 [97 P.2d 509], it was held that a telephone call to the hospital was not hearsay as it was not introduced for its truth, but only to show that it was made and acted upon. The issue there was whether an ambulance was responding to an emergency call at the time it was involved in an accident.

In the instant case the statements of the bartender and female employees were not introduced for truth of the contents but only to show what was said, for what was said is part of the violation itself. It made no difference whether the female employees wanted the beverages or not as long as they did ask the witness to purchase the beverages. As the violation is the solicitation, such can only be accomplished by words.

██ As to count V, appellant contends that it was not proved that Grace was served an alcoholic drink. The bar-

tender asked her if she wanted a "screwdriver" and she said she did. As we have heretofore pointed out, it is not necessary that she actually received the drink. Here, however, there is proof that she did receive an alcoholic drink.

Since it was indicated by the bartender that he was serving Grace a "screwdriver," there is a disputable presumption that she was served an alcoholic drink which presumption prevails until controverted and may support a finding. (*Griswold* v. *Department of Alcoholic Beverage Control*, 141 Cal.App.2d 807, 811 [297 P.2d 762].) In *Mercurio* v. *Department of Alcoholic etc. Control*, 144 Cal.App.2d 626, 634-635 [301 P.2d 474], it is said: "If the bartender were to serve soft drinks when alcoholic beverages were called for, then there would be a violation of section 382, Penal Code, which prohibits the sale of any article of drink, different from the one called for, without informing the purchaser of the difference." There is no evidence offered by appellant that an alcoholic drink was not served to Grace. On the contrary he testified that in his establishment a "screwdriver" consisted of vodka and orange juice. Also considered in the Mercurio case as an element in support of the finding that alcoholic beverages were solicited by female employees was the fact that the licensee fired such employees and the bartender upon discovering, through the accusation, that they were drinking on the job. The appellant here also testified to taking the same course of action.

Appellant makes the same contention as to count V that he made as to count III, namely, that the testimony of solicitation was hearsay. As heretofore shown, there is no merit to this contention.

2. *Section 303a, Penal Code.*

 While the evidence under both counts supports the finding of violation of rule 143, it does not support a violation of section 303a, Penal Code. That section makes it unlawful "in any place of business where alcoholic beverages are sold to be consumed upon the premises, *for any person to loiter in* or about said premises for the purpose of begging or soliciting any patron or customer of, or visitor in, such premises to purchase any alcoholic beverage for the one begging or soliciting." (Emphasis added.) Count V of the accusation charged appellant with knowingly permitting his employee Grace, a cigarette girl, to solicit a certain patron for "screwdrivers." At the commencement of the accusation which charged appel-

lant with six counts of violation appears "Rule violated 143 Other law violated 303a Penal Code." However, in count V, no reference is made to "loitering" which is an integral part of the offense stated in section 303a. The hearing officer's findings adopted by the department found in the language of the charge. Section 303a does not deal with the *licensee* of a place of business where liquor is sold. It prohibits *any person from loitering* in such a place *to solicit* the purchase of alcoholic drinks. Assuming that a person employed by a licensee as a cigarette girl could "loiter" in the place where she is hired to work, and assuming that in some way section 303a could apply to the employer (appellant was not charged either with a violation of the section himself or with permitting his employee to violate that section) there is no finding here that Grace did "loiter in or about said premises." It was found that the licensee permitted her to solicit a certain patron for alcoholic drinks, but it was not found that he permitted her to "loiter" for such purpose. Thus because of lack of charge and of findings there could be under no circumstances of the case a violation of section 303a.

Respondent contends that under the doctrine of implied findings (see *Sacramento etc. Dist.* v. *Pacific G. & E. Co.* (1946), 72 Cal.App.2d 638, 648 [165 P.2d 741] ; *Bartholomae Oil Corp.* v. *Seager*, 35 Cal.App.2d 77, 80 [94 P.2d 614] ; *Wheeler* v. *Gregg*, 90 Cal.App.2d 348, 360 [203 P.2d 37] ), we must assume that the department, in stating that under count V appellant violated section 303a, Penal Code, thereby found (without mentioning them) all of the essential elements of the offense as described in that section, including the requirement of "loitering."[4]

We cannot assume, however, that the department found as a fact an element of a crime that was not even charged, to wit, loitering. ■ While accusations before the department do not have to be as precise as those in a criminal proceeding, they do have to disclose to the licensee the particular offense with which he is charged, at least to the extent of stating the essential elements of that offense.

■ The department erroneously determined that the acts found under count V violated both rule 143 and section 303a, Penal Code, and revoked appellant's license for such

[4]This would include a finding, too, that the employer, under section 303a, was a person loitering in the premises for the purpose of soliciting the purchase of alcoholic beverages—a manifest absurdity.

violations. We have no way of knowing whether the department would have revoked the license had it known that the acts found did not constitute a violation of section 303a. The matter will have to be remanded to the department to reassess the penalty under count V for a violation of rule 143.

### 3. *Exhaustion of Administrative Remedy.*

Respondent contends that because appellant did not raise the question of the violation of section 303a, Penal Code, in either the Department of Alcoholic Beverage Control or the Alcoholic Beverage Control Board of Appeal, he did not exhaust his administrative remedy, and that moreover, he did not raise the question in the trial court, and therefore this court may not consider the question. Generally speaking it is a well accepted rule of law that the courts have no jurisdiction over a matter arising in an administrative agency until the administrative processes afforded by law have been exhausted. (See *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715] ; *Alexander* v. *State Personnel Board,* 22 Cal.2d 198 [137 P.2d 433].)

Also it has been held that before a party to a proceeding before the Department of Alcoholic Beverage Control can seek judicial review of a decision of that department he must prosecute an appeal before the Alcoholic Beverage Control Appeals Board. (See *Fiscus* v. *Department of Alcoholic Bev. Control,* 155 Cal.App.2d 234 [317 P.2d 993].) Moreover, a party appearing before an administrative agency may not make a skeletal presentation of facts with the expectation that he may make a full and more complete showing before the courts. (See *Dare* v. *Board of Medical Examiners,* 21 Cal. 2d 790, 799 [136 P.2d 304] ; *West Coast etc. Co.* v. *Contractors' etc. Board,* 72 Cal.App.2d 287, 297 [164 P.2d 811] ; *Vaughn* v. *Board of Police Commrs.,* 59 Cal.App.2d 771, 781 [140 P.2d 130].)

Likewise it is a general rule that questions not raised in the trial court will not be considered on appeal. (See 3 Cal.Jur.2d, § 140, p. 604.) However, this rule is subject to exception ''where fundamental error or gross irregularity is involved.'' (3 Cal.Jur.2d, § 141, p. 605; see exceptions there set forth.)

Likewise, the general rule of exhaustion of administrative remedies has its exceptions. (See 2 Cal.Jur.2d, § 185, p. 308; § 189, p. 314.) One exception is where irreparable injury will result if an administrative hearing is permitted to pro-

ceed and its orders made effective without prior judicial inter-ference. (*Abelleira* v. *District Court of Appeal, supra,* 17 Cal.2d 280, 296.) Inadequacy of administrative relief is an-other exception. (*United States* v. *Superior Court* (1941), 19 Cal.2d 189, 196 [120 P.2d 26].) In *Gaylord* v. *City of Pasadena,* 175 Cal. 433, 440 [166 P. 348], the court held that the plaintiff, who had refused to comply with an order of the city electrician under an ordinance giving the latter the power to order wiring changed in any building, was not required under the circumstances of the case to exhaust his administra-tive remedy of appeal to the city council before appealing to the courts. While the opinion does not discuss the basis for the ruling, it appears that the real ground for this exception to the general rule of exhaustion of administrative remedy was that such exception was necessary in fairness and equity. ". . . the rule by which a court declines to consider issues not raised below is not rigidly and undeviatingly applied, and exceptional circumstances may prompt the reviewing court to consider questions of law not pressed or passed upon by the administrative agency, where injustice might otherwise re-sult." (42 Am.Jur. § 236, p. 676.)

The situation in our case is well expressed in *Hormel* v. *Helvering,* 312 U.S. 552, 556-557 [61 S.Ct. 719, 721, 85 L.Ed. 1037] : "Ordinarily an appellate court does not give considera-tion to issues not raised below. . . . Recognition of this gen-eral principle has caused this Court to say on a number of occasions that the reviewing court should pass by, without decision, questions which were not urged before the Board of Tax Appeals. . . . There may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below. See *Blair* v. *Oesterlein Machine Co.,* 275 U.S. 220, 225 [48 S.Ct. 87, 88, 72 L.Ed. 249].

"Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and un-deviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifi-cally urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of funda-mental justice."

Our case cries aloud for the application, in the in-

terest of justice and fairness, of the exception to the general rule. In count III petitioner was charged with, and found guilty of permitting his employee Anna to solicit the purchase of an alcoholic beverage. In count V petitioner was charged in almost identical language, of permitting his employee Grace to solicit the purchase of an alcoholic beverage. The department further found (and properly so) that in each of these counts petitioner violated rule 143. The penalty applied for the count III violation was suspension of petitioner's license for 60 days. The penalty applied to the count V violation for identically the same type of violation as that in count III was revocation of petitioner's license, the severest penalty that the department could impose. As pointed out before, the department considered that the acts under count V were also a violation of section 303a, Penal Code. As we have shown they were not. While possibly the department, had it known that section 303a was not involved here, might have had the power to impose the severe penalty of revoking the license for a second violation of rule 143 only, we have no way of knowing that it would have done so. Certainly before the petitioner's license is revoked the department should know that it is dealing with a violation of rule 143 only. Thus it may very well be that were we not to apply the exception to the exhaustion of remedy rule, petitioner would suffer the extreme penalty of losing his license, when if the true situation were known to the department he might not do so. In all fairness and justice, then, the case must be returned to the department for revaluation of the penalty under count V.

The judgment as to count III is affirmed. As to count V, it is reversed with instructions to the Department of Alcoholic Beverage Control to reassess the penalty.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied July 24, 1958.